## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIDEAH CAZAUBON, | : | Civil No. 3:21-CV-2015 |
| | : | |
| **Plaintiff,** | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARYWOOD UNIVERSITY, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM AND ORDER

### I.   Factual and Procedural Background

This race and disability discrimination lawsuit comes before us for resolution of a number of discovery disputes. In her complaint, the plaintiff alleges that she was terminated from Marywood University's Ph.D. Program in a manner which discriminated against her based upon her race and disability status. The defendant, in turn, insists that it had a neutral, non-discriminatory, and valid reason for terminating Cazaubon's participation in this program; namely, her violation of client confidentiality rules.

This case has been the subject of occasionally contentious discovery and in the course of this ongoing discovery, issues have now arisen which require our attention. These discovery disputes are embodied in a series of letters filed with the court.

1

(Docs. 16-23). In essence the parties have identified three matters of contention in this case. Two of these issues appear to present fairly straightforward questions. First, the plaintiff insists that the defendant should be required to produce her complete academic file. According to the defendant, Marywood has provided this information to the plaintiff but nonetheless some dispute remains in this regard. Second, the plaintiff requests that we conduct an *in camera* review of a single redacted line from the minority view's section of an academic grievance committee report relating to Cazaubon's termination from this Ph.D. program. The minority view's section of the report indicates that some academicians on the committee had misgivings regarding the decision to terminate Cazaubon from this Ph.D. program citing an alleged failure to "align with the students' disciplinary handbook" and the fact that Cazaubon's "physical and mental well-being were not given sufficient consideration throughout the process". One line has been redacted from this one-page document, and this document has been provided to us by the defendant in its unredacted form for our *in camera* review.

The final, major, discovery issue dividing the parties relates to the proper scope of comparator discovery in this case. On this score, the parties' positions stand in stark contrast. For her part, Cazaubon defines proper comparators broadly to include all "Marywood University Psy.D. students who were alleged to have (1) violated PSC Policy, (2) failed to maintain confidentiality and/or commit a confidentiality

violation, (3) failed to relate effectively in a professional manner with clients and colleagues, or (4) failed to demonstrate a high level of awareness of ethical issues and the importance of professional conduct and protection of confidential information." (Doc. 22 at 2). Cazaubon also seeks information regarding three specifically named alleged comparators.  (Id. at 3). In contrast Marywood invites us to define the proper scope of comparator evidence in a far narrower fashion, and limit those disclosures to "students who were disciplined for removing identifiable client information from the Psychological Services Center for the five-year period preceding Plaintiff's dismissal." (Doc. 23 at 1).

With the issues which divide the parties framed in this fashion, upon consideration, for the reasons set forth below, we will enter the following order: First, the defendants will be directed to provide the plaintiff access to her complete academic record. Second, the defendant will provide the one-page minority view's section of the academic grievance committee report to the plaintiff in its unredacted form.  Finally, the scope of the comparator evidence in this case will be defined as follows: For the five-year period preceding the plaintiff's termination from this Ph.D. Program the defendant shall produce academic disciplinary records of Marywood University Psy.D. students who were alleged to have (1) violated PSC Policy or (2) failed to maintain confidentiality and/or commit a confidentiality violation. In addition, the defendant shall produce the disciplinary records of the three person(s)

identified by the plaintiff as comparators. Given the substantial privacy concerns

relating to these records, the names and identifying information relating to these

persons should be redacted from the initial disclosure, and the defendant should

provide notice to any affected individuals so they may assert any individual privacy

concerns. Further any such disclosures will be governed by the confidentiality

agreement previously entered into by the parties.

## II.      Discussion

Rulings regarding discovery matters are consigned to the court's discretion and

judgment. Accordingly, the court's decisions regarding the conduct of discovery will

be disturbed only upon a showing of abuse of that discretion.  Marroquin-Manriquez

v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to

rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad
> discretion in resolving discovery disputes.  See Farmers & Merchs. Nat'l
> Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585
> (D.N.J. 1997).   When a magistrate judge's decision involves a
> discretionary [discovery] matter . . ., "courts in this district have
> determined that the clearly erroneous standard implicitly becomes an
> abuse of discretion standard."  Saldi v. Paul Revere Life Ins. Co., 224
> F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States,
> 943 F. Supp. 501, 502 (E.D. Pa. 1996)).  Under the standard, a magistrate
> judge's discovery ruling "is entitled to great deference and is reversible
> only for abuse of discretion."  Kresefky v. Panasonic Commc'ns and
> Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v.
> BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999)
> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223

F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson

v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Guided by these principles at the outset we agree that, if it has not already occurred, the plaintiff should be provided with access to the entirety of her academic records at Marywood University. These records are plainly relevant to issues relating to her performance in the Ph.D. program as well as any violations of program rules, matters which lie at the heart of this litigation.

Second, upon consideration, we conclude that the one line redacted from the one-page minority view's statement of the academic grievance committee is not cloaked in privilege and should be disclosed. On this score, we recognize that the attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn, 449 U.S. at 389. The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for

the purposes of obtaining or providing legal assistance for the client.' " <u>In re Teleglobe Communications Corp</u>., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976); <u>see also</u> <u>In re Ford Motor Co</u>., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); <u>United States v. Amerada Hess Corp</u>., 619 F.2d 980, 986 (3d Cir. 1980). The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." <u>Upjohn</u>, 449 U.S. at 390. However, when examining privilege claims we must be mindful that the privilege obstructs the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." <u>Wachtel</u>, 482 F.3d at 231; <u>see also</u> <u>Westinghouse Elec. Corp</u>., 951 F.2d at 1423.

Applying these principles, we find that the single line redacted from this report is not cloaked in privilege since, at most, it appears to reflect a discussion between

academicians on the committee regarding whether to seek the advice of counsel. As

such, this discussion is nothing more than the prelude to what may have later been an

attorney-client communication, but it is not embraced by the privilege. Simply put,

in our view a group of non-lawyers discussing whether they should consult with a

lawyer is not an attorney-client privileged communication.

Finally, as we have noted, the parties are engaged in a dispute regarding the

proper scope of comparator discovery, with each side inviting us to either take a very

narrow path, or a broadly sweeping approach to, this comparator discovery. On this

score, it has been noted that:

> In the employment discrimination context it can hardly be disputed that discovery directed to similarly situated employees is relevant. Salamone v. Carter's Retail, Inc., C.A. No. 09–5856 (GEB), 2011 WL 1458063, at *3 (D.N.J. April 14, 2011); see also Davis v. Cleary, C.A. No. 09–0925 (AET), 2011 WL 4435697, at *5 (D.N.J. Sept. 22, 2011). Indeed, discovery in these cases is broad because plaintiffs often rely on indirect or circumstantial proof of discrimination. Salamone, at *3. There is no general rule to determine who is or who is not a similarly situated employee. Instead, "case specific definitions" are used. Id., at *3. The determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in. Wilcher v. Postmaster General, 441 Fed. Appx. 879, 882 (3rd Cir.2011). . . . . Further, the Court does not accept defendant's argument that plaintiff must demonstrate a "particularized showing" for what he seeks. Pursuant to Fed. R. Civ. P. 26(b), plaintiff is entitled to any nonprivileged matter relevant to his claim. "Courts have construed this rule liberally, creating a broad vista for discovery." E.E.O.C. v. Princeton Healthcare System, C.A. No. 10–4126 (JAP), 2011 WL 2148660, at *11 (D.N.J. May 31, 2011) (citation omitted).

Justiano v. G4S Secure Sols., Inc., 291 F.R.D. 80, 83 (D.N.J. 2013). Thus, in the exercise of discretion, courts have not required a heightened threshold showing of an absolute and total factual identity between the plaintiff and purported comparators prior to allowing comparator discovery. Instead, courts have permitted discovery of the background of alleged "comparators, the facts surrounding incidents for which comparators were or were not disciplined, and whether potential comparators should be considered as comparators in the instant case." Miller v. Daimler Chrysler Corp., 219 F.R.D. 331, 333 (D. Del. 2003). This approach to comparator discovery, in turn, is consistent with the guidance provided by Rule 26 which permits discovery of non-privileged matters relevant to a claim or defense and does not limit the scope of discovery strictly to admissible evidence at trial. Fed. R. Civ. P. 26(b).

Guided by these legal tenets, and given the issues raised in this litigation, we believe that the appropriate scope of comparator discovery is as follows: For the five-year period preceding the plaintiff's termination from this Ph.D. program the defendant shall produce academic disciplinary records of Marywood University Psy.D. students who were alleged to have (1) violated PSC Policy or (2) failed to maintain confidentiality and/or commit a confidentiality violation. In addition, the defendant shall produce the disciplinary records of the three person(s) identified by the plaintiff as comparators.

We recognize, however, that there are legitimate and significant privacy concerns for third parties implicated by this form of comparator discovery. Accordingly, in order to protect those third-party privacy interests we will also direct that the names and identifying information relating to these third parties be redacted from the initial disclosure, and the defendant should provide notice to any affected individuals so they may independently assert any individual privacy concerns. Further any such disclosures will be governed by the confidentiality agreement previously entered into by the parties.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January  24, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIDEAH CAZAUBON, | : | Civil No. 3:21-CV-2015 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARYWOOD UNIVERSITY, | : | |
| | : | |
| Defendants | : | |

## ORDER

In accordance with the accompanying Memorandum, IT IS ORDERED as follows:

First, the defendants will provide the plaintiff access to her complete academic record.

Second, the defendant will provide the one-page minority view's section of the academic grievance committee report to the plaintiff in its unredacted form.

Third, the defendant will provide the following comparator discovery as follows: For the five-year period preceding the plaintiff's termination from this PhD. program the defendant shall produce academic disciplinary records of Marywood University Psy.D. students who were alleged to have (1) violated PSC Policy or (2) failed to maintain confidentiality and/or commit a confidentiality violation. In addition, the defendant shall produce the disciplinary records of the three person(s)

identified by the plaintiff as comparators. In order to protect the privacy interests of potential third-party comparators IT IS FURTHER ORDERED that the names and identifying information relating to these third parties be redacted from the initial disclosure, and the defendant should provide notice to any affected individuals so they may independently assert any specific privacy concerns. Further any such disclosures will be governed by the confidentiality agreement previously entered into by the parties.

So ordered this 24th day of January 2023.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge